*381
 
 OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 In a personal injury case involving a claim of lost, past and future earnings resulting from an alleged permanent disability from work, evidence that the plaintiff voluntarily chose to retire is often so prejudicial as to be inadmissible; it may be allowed, however, in the court’s discretion in limited circumstances, where it has significant probative value with respect to a validly raised question about the plaintiff’s malingering or motivation for not working. Under the particular circumstances here, the trial court did not abuse its discretion in allowing relevant proof of plaintiff’s retirement and, therefore, the order of the Appellate Division should be affirmed.
 

 I
 

 On April 26, 1978, plaintiff, then 50 years of age and employed by defendant Board of Education as a teacher, fell in a school auditorium and injured her knee. In the jury trial of her negligence action against defendants — which took place eight years later and consumed 13 trial days over a three-week period — the issues of liability and damages were vigorously disputed. On cross-examination of plaintiff and her witnesses, as well as on summation, defense counsel raised questions concerning where, how and why plaintiff fell and whether the Board of Education had received notice of the claimed defect. Defense counsel cast doubt on plaintiff’s credibility by, among other things, showing inconsistencies between her trial and pretrial testimony about the location of the alleged defect in the auditorium and the length of time prior to the accident that plaintiff had not attended assemblies there. At the close of the evidence, the trial court submitted the issue of defendants’ negligence to the jury, and in a special verdict, the jury found unanimously that defendants were not responsible.
 

 Prior to the opening of trial, on plaintiff’s motion
 
 in limine
 
 
 *382
 
 to preclude any evidence of her receipt of benefits as barred by the collateral source rule, the trial court ordered defense counsel to refrain from "any reference to any benefits [plaintiff]
 
 may have received
 
 [emphasis added]”. In her opening, defense counsel stated, among other things, that "Mrs. Kish is going to try to convince you that the reason that she hasn’t been able to work is because of that sprained knee and the supposed negligence of the City. I think what the evidence is going to show you is that Mrs. Kish has preferred not to look for any work.”
 

 In support of her claim for lost earnings, plaintiff submitted evidence that she was totally and permanently disabled from the knee injury and the psychological effect of the accident. Throughout the trial, defendants disputed the nature and extent of the impairment to plaintiff’s knee and questioned whether the impairment was related to the accident rather than to a previously existing condition. The defense offered proof that, contrary to plaintiff’s testimony, she was not in good health at the time of her injury and that she had received treatment for various ailments on over 30 occasions in the months immediately preceding the accident. In particular, defendants contested the claim that the knee injury and the ensuing emotional problems were so disabling as to prevent her from accepting gainful employment.
 

 During the trial, evidence was adduced suggesting that plaintiff’s emotional difficulties were the result of the health problems of her husband and her son rather than her knee injury. As evidence of the contention that plaintiff could have worked had she desired to do so, defense counsel presented testimony of an expert in vocational rehabilitation who testified concerning the availability of jobs for someone with plaintiff’s disability. In addition, an administrator from the medical bureau of the Board of Education described the various accommodations in working conditions that could be made to enable a teacher with a physical disability such as plaintiff’s to resume employment. Moreover, plaintiff’s own psychologist stated that returning to work would benefit plaintiff psychologically and that "eventually she probably could” return to work.
 

 The issue concerning plaintiff’s retirement arose when defense counsel was permitted, over objection, to develop in cross-examining plaintiff that she had retired approximately one year and eight months after the accident. The court
 
 *383
 
 denied plaintiffs ensuing motion for a mistrial. In dismissing the argument that defense counsel, by asking about retirement, had violated its
 
 in limine
 
 order and the collateral source rule of
 
 Healy v Rennert
 
 (9 NY2d 202, 205-208), the court stated to plaintiffs attorney, "[C]ounselor, I am familiar with the collateral source rule and it has
 
 not been violated in this case. ”
 
 (Emphasis added.)
 

 Except for a single unsolicited reference made by a defense witness to the amount of plaintiffs pension, the court’s
 
 in limine
 
 ruling precluding any mention of benefits received by plaintiff was not violated. The court immediately struck the defense witness’s gratuitous statement as to plaintiffs pension and gave the jury an appropriate instruction to disregard it. Plaintiffs counsel made no objection to this instruction and requested no further instruction pertaining to the question of plaintiffs retirement, then or at any other time. In its final instructions to the jury, the court used the exact words requested by plaintiff: "In considering the amount of money which the plaintiff has lost by reason of her inability to work there is no evidence in this case that plaintiff is receiving any moneys from any outside source and you are not to consider or speculate about any such sums in deliberating on lost income.”
 

 Plaintiff took no exception to the charge and does not raise one on appeal. She does argue, however, that the court’s admission of proof of her disability retirement was so prejudicial as to have inevitably influenced the jury’s verdict.
 

 The Appellate Division unanimously affirmed, without opinion. We now affirm.
 

 II
 

 Plaintiffs primary contention on appeal is that the trial court, in permitting proof of plaintiffs retirement, acted in contravention of the collateral source rule established in
 
 Healy v Rennert (supra).
 
 We disagree. In
 
 Healy,
 
 the court held that it was error to permit the defendant to show that, as a result of injuries sustained in the accident, plaintiff, a New York City fireman, could retire at three quarters of his regular salary. Our holding was based on the potential prejudice of that proof — i.e., that evidence of "the acceleration and
 
 increase in the amount of payments
 
 of plaintiffs pension” might unduly affect the outcome of the case, influencing the jury to reach a verdict based upon a belief that the plaintiff
 
 *384
 
 was "not harmed rather than on questions of negligence and contributory negligence.” (9 NY2d, at 207 [emphasis added].) Similarly, we held that it was improper to permit the defendant to show collateral source payments from plaintiffs membership in a health insurance plan, relying on the rule prevailing in most jurisdictions that "the damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute”
 
 (id.,
 
 at 206).
 

 The theory underlying the collateral source rule is simply that a negligent defendant should not, in fairness, be permitted to reduce its liability in damages by showing that the plaintiff is already entitled by contract or employment right to reimbursement for such items as medical expenses and lost wages. That rule is not
 
 necessarily
 
 violated where proof is offered showing that a plaintiff is not permanently disabled and has stopped working solely for a non-injury-related reason, such as voluntary retirement. While, to be sure, such evidence relates to the issue of damages, its purpose and effect may not at all be to offset specific amounts against the sum which a plaintiff might otherwise be awarded, but only to undermine the
 
 very basis
 
 for the claim — i.e., that the plaintiff stopped working because of the effect of the injury.
 
 [1]
 

 Plaintiff argues, however, that even if proof of her retirement does not fall within the strict bounds of the
 
 Healy
 
 preclusionary rule, it should, nevertheless, be excluded. She would have us adopt a categorical rule that the prejudicial impact of such proof invariably outweighs its probative value even though devoid of reference to specific monetary benefits, and even where offered solely as bearing on the issue of plaintiffs motives and credibility. Such a holding would
 
 *385
 
 amount to a substantial enlargement of
 
 Healy
 
 and we decline to adopt it.
 
 [2]
 

 We recognize that proof of a plaintiff’s retirement, even standing alone, may carry with it significant potential for prejudice since the jurors might speculate about pension benefits in assessing damages. To avoid such prejudice, the admission of retirement evidence should be precluded unless it is centrally relevant to issues in substantial dispute bearing on the legitimacy of the claim of permanent disability — for example, plaintiff’s motivation for not working and defense claims of exaggeration or malingering. If retirement proof is allowed, the court should caution the jury in its final instructions that there is no evidence in the case of any retirement benefits and that the jury must not speculate as to the possibility of plaintiff’s receipt of such benefits in assessing damages or determining liability or any other issue in the case
 
 (cf., Matter of Lanzano v City of New York,
 
 71 NY2d 208, 212). Additionally, if requested, the court should give limiting instructions at the time the retirement evidence is received.
 

 In the case before us, the court did not abuse its discretion in permitting proof of plaintiff’s retirement. Plaintiff’s motivation in not resuming her work was made a central issue throughout the trial. Defense counsel challenged the seriousness of her knee injury and whether the injury and its emotional consequences had, in fact, disabled her from work. Substantial evidence was adduced to the effect that suitable work was available, that plaintiff was physically capable of working, that workplace adjustments could be made to accommodate her physical condition and that working would be of benefit to her psychologically. The fact that she had voluntarily terminated her employment and elected to take retirement status (as opposed to having received any amounts of retirement income) was of sufficient probative value on the critical issue of whether plaintiff, although claiming to be unable to work because of her injury, had, in truth, ceased working because she preferred not to work at all. In its final
 
 *386
 
 instructions to the jury, the court could not have made it clearer that there was "no evidence * * * that Plaintiff [was] receiving any money from any outside source” and that the jurors were "not to consider or speculate about any such sums” in fixing plaintiff’s loss due to her inability to work.
 

 Finally, we reject plaintiff’s argument that the court abused its discretion in denying her mistrial motions and that she was deprived of a fair trial by the conduct of defense counsel. As noted, the record does not support her contention that defense counsel repeatedly violated the
 
 in limine
 
 ruling pertaining to collateral source evidence. Many of the incidents of alleged misconduct involve matters which were either permissible under the court’s rulings or arguments which were not inappropriate in the context of a sharply contested lawsuit where the main defense to plaintiff’s claim of permanent injury was that she simply preferred not to work. Indeed, after the jury verdict, when plaintiff moved to set it aside as against the weight of the evidence — a motion which the court appropriately denied on the ground that such "was strictly a jury question” — her counsel expressed no objection to the court’s treatment of the collateral source question and made no assertion of any impropriety by defense counsel.
 

 There is, thus, no basis for disturbing the Appellate Division’s affirmance on the collateral source issue; nor do we believe that any of plaintiff’s remaining arguments support a reversal.
 

 Accordingly, the order should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . We reject plaintiffs further contention that the
 
 Healy
 
 court’s holding that the jurors should not have been permitted to consider plaintiff’s motivation in retiring at three-quarters pay compels the exclusion of the evidence offered here on the issue of plaintiff’s motivation. In
 
 Healy v Rennert,
 
 the court specifically noted that "[pjlaintiffs motivation in applying for a pension had
 
 no bearing on the issues in [the] case”
 
 and that, in any event, the "jurors are likely to have been confused by the instruction” (9 NY2d 202, 208 [emphasis added]). Here, in contrast, plaintiff’s motivation in deciding to take retirement status is highly relevant. There was a serious dispute as to whether plaintiff’s injury was as serious as she claimed and whether she had stopped working because of disability from the injury or because she simply wished to retire.
 

 [2]
 

 . Contrary to plaintiff’s suggestion, the Supreme Court in
 
 Eichel v New York Cent. R. R. Co.
 
 (375 US 253, 254-255) did not adopt a rule that the prejudice from the type of evidence offered here would invariably outweigh its probative value. The evidence which the
 
 Eichel
 
 court held to be properly excluded on the issue of motivation was plaintiff’s receipt of benefits under the Railroad Retirement Act, not the fact of plaintiff’s retirement.
 
 (See generally, Hrnjak v Graymar, Inc.,
 
 4 Cal 3d 623, 484 P2d 599, 604-605; 1 NY PJI2d 654-656; 1 NY PJI2d 445-448 [1989 Cum Supp].)